**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DERRICK HAMILTON,

                              Plaintiff,

               - v -                                        Civ. No. 9:10-CV-1066
                                                                    (MAD/RFT)

BRIAN FISHER, *Commissioner of New York State Department
of Correctional Services;*[1] JOSEPH T. SMITH, *Superintendent of
Shawangunk Corr.*; JOHN MALY, *Deputy of Shawangunk Corr.
Fac.*; KAY KNOTT, *Deputy of Shawangunk Corr. Fac.*; DENNIS
GIGLIO, *Captain of Shawangunk Corr. Fac.*; G. GARDNER,
*Lieutenant of Shawangunk Corr. Fac.*; R.K. WOODS, *Superintendent
of Shawangunk Corr. Fac.*;[2] M. SHEAHAN, *Deputy Supt. of
Shawangunk Corr. Fac.*;[3] SEARGENT BRAND, *Upstate Corr. Fac.*;
CURTIS DROWNS, *Commissioner Hearing Officer*; NORMAN
BEZIO, *Director of Special Housing*; H. MOSS, *Sergeant
Shawangunk Corr. Fac.*; M. SIGNORELLA, *Corr. Officer,
Shawangunk Corr. Fac.*; D. FORBES, *Corr. Officer, Shawangunk
Corr. Fac.*; JOE WOLCZYK, *Commissioner Hearing Officer*; NEIL
HOCHMAN, *Psychologist, Shawangunk Corr. Fac.*; SUSAN
STRICKLAND, *Mental Health Unit Chief Auburn Corr. Fac.*;
OSMAN YILDIZ, *Social Worker, Sullivan Corr. Fac.*; SUE ANN
SMITH, *Unit Chief, Sullivan Corr. Fac.*; DOCTOR MAHMUD,
*Psychiatrist, Sullivan Corr. Fac.*; DOREEN FABER, *Social
Worker, Auburn Corr. Fac.*; CHRISTOPHER P. MAYER, *Unit
Chief, Auburn Corr. Fac.*

                              Defendants.

---

[1] In the caption to his Complaint, Plaintiff spells this Defendant as "Brian Fisher." However, according to this Defendant's executed Acknowledgment of Service, the correct spelling of his last name is "Fischer," which Plaintiff utilizes throughout his Complaint.   Dkt. No. 20.  We will refer to him as such.

[2] Defendant Woods is named in Plaintiff's Complaint as a Superintendent at Shawangunk Correctional Facility. Upon information and belief, Defendant Woods was located at Upstate Correctional Facility during the pertinent period of time described in this action.  *See* Compl. at ¶ 9; Dkt. No. 35, Ack. of Service.

[3] Defendant Sheahan is named in Plaintiff's Complaint as a Deputy Superintendent at Shawangunk Correctional Facility.  Upon information and belief, Defendant Sheahan was located at Upstate Correctional Facility during the pertinent period of time described in this action.  *See* Compl. at ¶ 10; Dkt. No. 33, Ack. of Service.

**APPEARANCES:**                                    **OF COUNSEL:**

DERRICK HAMILTON
Plaintiff, *Pro Se*
175 Diamond Street
New Haven, CT 06515

HON. ERIC T. SCHNEIDERMAN                    CATHY Y. SHEEHAN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants[4]
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**<u>REPORT-RECOMMENDATION and ORDER</u>**

*Pro se* Plaintiff Derrick Hamilton brings this civil rights action, pursuant to 42 U.S.C. §

1983, against twenty-two Defendants, alleging, *inter alia*, that they violated his due process rights

in three disciplinary hearings, violated his Eighth Amendment right to be free from cruel and

unusual punishment, violated his First Amendment right to free exercise of religion, retaliated

against him for filing grievances, and conspired against him.  Dkt. No. 1, Compl.  Defendants now

move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No.

47.  Plaintiff opposes the Motion.  Dkt. No. 49.  For the reasons that follow, we recommend that

Defendants' Motion be **granted** in part and **denied** in part.

## I. BACKGROUND

The following facts are derived from Plaintiff's Complaint, which, in accordance with the

standard of review on a motion to dismiss, must be taken as true.  *See infra* Part II.A.

---

[4] Three Defendants have not been served in this action, and thus the Attorney General's Office has not appeared
on their behalf.  *See infra* Part II.C.

On or about November 30, 2007, while incarcerated at Shawangunk Correctional Facility ("Shawangunk"), Defendants Gardner, Giglio, Maly, and Smith sent two non-Defendant officers to Plaintiff's cell in order to confiscate all of Plaintiff's legal and personal documents. *See* Compl. at ¶ 35. One of the documents confiscated resulted in the dismissal of an unrelated 42 U.S.C. § 1983 claim. *Id.*

On December 10, 2007, Defendant Giglio presided over a disciplinary hearing on the charges that Plaintiff took nude photos while at a family reunion site, and sentenced Plaintiff to forty-five days of "keeplock" segregation, including the loss of packages, phone, commissary, and programs such as congregate and religious services. *Id.* at ¶¶ 36-37. Plaintiff began serving the sentence on December 13, 2007. *Id.* at ¶ 37. In keeplock, Plaintiff was deprived of the "everyday social stimuli afforded [to] the general prison population," group recreation activities, and vocational, academic, and/or social programs. *Id.* at ¶ 38. On February 8, 2008, Defendant Bezio reversed Defendant Giglio's guilty disposition, but Plaintiff had served the entire penalty by then. *Id.*

On February 12, 2008, Plaintiff was issued a false misbehavior report charging him with drug use. *Id.* at ¶ 39a.[5] On February 29, 2008, Defendant Knott presided over the disciplinary hearing, found Plaintiff guilty, and sentenced him to eighteen months in the special housing unit ("SHU") with a corresponding loss of phone, packages, and commissary. *Id.* Plaintiff states that "[d]uring the hearing[,] [D]efendant Knott violated [his] constitutional and regulatory rights and disregarded clear and convincing evidence that the urine tested was not [Plaintiff]'s." *Id.* On March 11, 2008, Defendant Bezio reversed Defendant Knott's decision and ordered a new hearing. *Id.* at ¶ 39b. However, Defendants Smith and Maly "refused to release Hamilton from the special housing unit

---

[5] Plaintiff mistakenly labels two consecutive and separate paragraphs in his Complaint with the number thirty-nine (39). For ease of reference, this Court will refer to the first paragraph as "39a" and the second as "39b."

pending the hearing." *Id.*   On March 18, Defendant Drowns held the rehearing ordered by Defendant Bezio and found Plaintiff guilty, and, like Defendant Knott, imposed a sentence of eighteen months confinement in SHU and loss of phones, packages and commissary; Plaintiff was not in attendance at the hearing. *Id.* at ¶ 40.

It is unclear from Plaintiff's Complaint exactly what happened next, but from what this Court can discern, on May 22, 2008, Defendant Bezio again reversed this disposition. *Id.* at ¶ 41.   At an unstated time, Defendant Smith "signed his signature to confirm that the hearings held on December [10], 2007,[6] February 29, 2008[,] and March 18, 2008[,] were conducted in accordance with constitutional and regulatory rights." *Id.* at ¶ 42.

Meanwhile, on May 1, 2008, Defendants Fischer and Bezio approved Defendant Smith's request to transfer Plaintiff to Upstate Correctional Facility ("Upstate").   Plaintiff alleges that Defendant Smith's transfer request was in retaliation to the grievances Plaintiff made about Defendants Smith and Knott; specifically, that Defendant Smith was liable for the wrongful death of "Larry Davis," that Defendant Knott denied Plaintiff unspecified rights at the February 29, 2008 administrative hearing, and that Defendant Knott "deliberately destroy[ed] evidence to hide . . . due process violations captured on the audio tape." *Id.* at ¶ 59. While at Upstate, Plaintiff was deprived of headphones, lotion, television, daily access to the law library, family day events, and was subjected to loud banging and yelling from other inmates, among other things. *See id.* at ¶ 60.   At some point, Defendants Woods, Sheahan, and Brand destroyed five bags of Plaintiff's personal property, which contained chiefly clothes, hygienic products, and approximately one thousand

---

[6] Plaintiff clearly states that the administrative hearing Defendant Giglio presided over occurred on December 10, 2007.  *See* Compl. at ¶ 36.  He further states that he began "serving the sanctions" assigned from that hearing on December 13, 2007.  *Id.* at ¶ 37.  Accordingly, when he references a "hearing[] held on December 13, 2007," *see id.* at ¶ 42, we presume Plaintiff is referring to his December 10, 2007 hearing.

photographs. *Id.* at ¶ 61.

On June 3, 2008, Plaintiff was transferred back to the Shawangunk general population by Defendants Fischer and Bezio after reports of Plaintiff's misbehavior. *Id.* at ¶ 43. Plaintiff served an aggregate total of 135 days of "segregation time" on the incidents described above. *Id.* at ¶ 42. Plaintiff claims that he was returned to "atypical and significant hardships" when he reentered Shawangunk, and that Defendants Fischer and Bezio "failed to correct the policies, and practices, [of] [D]efendants Smith, Maly, Drowns, Knott, Gardner, Giglio, and all others named above who participated in the unconstitutional activity." *Id.* at ¶¶ 62-63.

On March 2, 2009, Plaintiff became an inmate liaison committee clerk. *Id.* at ¶ 44. On or about March 10, Defendant Gardner threatened Plaintiff to stop making complaints about the correctional facility staff or that Plaintiff would lose his liaison job and be placed in SHU. *Id.* at ¶ 45. Then on March 13, 2009, Defendant Gardner "placed Hamilton in the special housing unit under involuntary protective custody status[,] [i]n a cell without any desk, chair, lockers or humane conditions." *Id.* Defendant Drowns held an administrative hearing on March 19, affirming the involuntary protective custody placement. *Id.* at ¶ 46. Defendants Drowns and Gardner lied at the hearing when they claimed that "the Blood gang wanted to harm" Plaintiff; Plaintiff was also denied the opportunity to present documentary evidence. *Id.*

From March 13, 2009 until November 2, 2009, Plaintiff was kept in SHU under involuntary protective custody status, while he "complained constantly" to Defendants Fischer, Smith, Maly, Giglio, Knott, and Hochman that this placement was causing "sever[e] depression[,] [e]specially since [D]efendants . . . continually informed Hamilton that his life was[] in jeopardy[,] [c]ausing Hamilton to become paranoid, unable to sleep and delusional[.]" *Id.* at ¶ 48. Defendant Maly

"conducted sham reviews of Hamilton's involuntary protective custody placement [without] meaningful effort . . . to return Hamilton to the general population or transfer Hamilton." *Id.* at ¶ 47.  Additionally, Defendants "Fischer, Smith, Maly, Giglio, Knott, Hochman, Bezio, and others" refused to provide Plaintiff with "mental health treatment or transfer him out of the conditions that caused the depression[,] [but rather] continued the sham mental health interviews." *Id.* at ¶ 49.

On November 2, 2009, Plaintiff told Defendant Moss that he wanted to be removed from SHU and be placed in a "one on one strip cell," and that Plaintiff had medication in his possession he "was thinking of taking unless he was removed." *Id.* at ¶ 50.  Defendant Moss did not immediately move Plaintiff, and Plaintiff "swallowed a handful of pills [in an] attempt[] to commit suicide." *Id.*  He was taken to Cornwall St. Luke's Hospital and treated. *Id.* at ¶ 51.  While at St. Luke's, Defendants Signorella and Forbes repeatedly punched Plaintiff in the ribs, stomach, and chest while he was shackled in the bed, causing him "tremendous[]" pain; they also threatened to kill him. *Id.* at ¶ 52.  Because Plaintiff refused to leave the hospital, Defendants Signorella and Forbes falsified a report stating that Plaintiff caused a disturbance. *Id.*

Plaintiff was transferred to the mental health unit at the Sullivan Correctional Facility where he remained until November 13, 2009. *Id.* at ¶ 51.  There, Plaintiff saw Defendants Osman Yildiz, a mental health clinician, and Doctor Mahmud, to whom Plaintiff explained that he would attempt suicide again if returned to Shawangunk's SHU. *Id.* at ¶ 53.  These Defendants were "informed by security at [S]hawangunk that Hamilton only took the pills as a ploy to be removed from special housing[,]" but Plaintiff told them that "he took the pills because [D]efendants Moss, Hochman, Fischer, Bezio, and others did not take his depression seriously." *Id.* at ¶ 54.  Plaintiff was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, but despite the

diagnosis, Defendants Yildiz and Mahmud tried to persuade Plaintiff to return to Shawangunk. *Id.* at ¶ 55.

Plaintiff claims that on or about November 5, 2009, Defendents Yildiz, Mahmud, and Sue Ann Smith conspired with Defendants Moss when they stated that Plaintiff was "attempting to manipulate the mental health unit to be removed from involuntary protective custody." Defendant Moss also wrote a false misbehavior report charging Plaintiff with faking a suicide attempt in order to be removed from Shawangunk's SHU. *Id.* at ¶¶ 56-58.

On November 13, 2009, Defendants Fischer and Bezio transferred Plaintiff to Auburn Correctional Facility ("Auburn") and assigned him to the SHU. On November 14, 2009, Plaintiff was issued two misbehavior reports, which Plaintiff attests were issued "in retaliation for the November 2, 2009, mental anxiety and depression Hamilton suffered while at Shawangunk." *Id.* at ¶ 64. Defendant Wolczyk presided over Plaintiff's disciplinary hearing, and on December 10, 2009, found Plaintiff guilty and assigned him twelve months confinement in SHU, loss of phones, commissary, packages, and good time credits; at this hearing, Plaintiff was "deprived from calling relevant witnesses or [from] produc[ing] documentary evidence (mental health records)." *Id.* at ¶ 66.

Plaintiff also claims that Defendant Fischer has refused to let Plaintiff practice Judaism or provide Plaintiff with a kosher diet, and that Defendants Fischer, Strickland, Faber, and Mayer deprived Plaintiff from seeing a psychiatrist, a therapeutic counselor, or receive any mental health treatment. *Id.* at ¶¶ 72-75. Instead, these Defendants "filed false documents to make it seem as if Hamilton was being screened by staff [] and was found to be in good mental health." *Id.* at ¶ 75.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129

S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*).[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

**B. Plaintiff's Claims**

In his often-conclusory and always-confusing Complaint, Plaintiff makes a variety of

---

[7] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

allegations against the myriad Defendants in this action.   This Court will address those claims *seriatim.*

### 1. Eighth Amendment

Reading his Complaint liberally, Plaintiff states three distinct Eighth Amendment claims: deliberate indifference to his serious medical needs, excessive force, and inhumane conditions of confinement.

#### i. Deliberate Indifference to a Serious Medical Need

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'"  *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).  Under the objective prong, the alleged medical need must be "sufficiently serious." *Id.*; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain."  *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citation omitted).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic

and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Under the subjective component, the plaintiff must demonstrate that the defendant acted with "a

sufficiently culpable state of mind." *Hathaway I*, 37 F.3d at 66. The requisite culpable mental state

is similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991).

Plaintiff claims that he suffers from mental health ailments, particularly, adjustment disorder

with mixed anxiety and depressed mood. *See* Compl. at ¶ 55. According to his Complaint, the

"involuntary protective custody status caused him overt depression," and this, in turn, either

manifested itself "to the extent of being suicidal," or "he took the pills because Defendants Moss,

Hochman, Fischer, Bezio, and others did not take his depression seriously." *Id.* at ¶¶ 53-54.

Regardless of whether the Plaintiff states a "serious medical condition," he fails to allege that the

Defendants objectively deprived him of adequate medical care such that they would be

constitutionally liable. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *see also*

*Mercado v. City of New York*, 2011 WL 6057839, at *5 n.6 (S.D.N.Y. Dec. 5, 2011) ("Regardless

whether he was suicidal, that condition is not dispositive of the seriousness inquiry: 'although we

sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such

a condition is only one factor in determining whether a deprivation of adequate medical care . . .

establish[es] constitutional liability.'") (quoting *Salahuddin*, 467 F.3d at 280).

Plaintiff alleges that after he "swallowed a handful of pills," he was taken to St. Luke's

Hospital and treated for the overdose, and then transferred to the mental health unit at Sullivan

Correctional Facility, where he stayed for eleven days. Compl. at ¶¶ 50-51. His only complaint

about the medical care he received was that the medical personnel, Defendants Sue Ann Smith,

Yildiz, and Mahmud, believed "Hamilton was attempting to manipulate the mental health unit to be

removed from involuntary protective custody." *Id.* at ¶ 56.  Thus, Plaintiff does not allege any facts by which this Court could find that Defendants denied him adequate medical care.

Further, Plaintiff does not allege that the Defendants acted with the requisite culpable state of mind for a finding of deliberate indifference.  Plaintiff states that he "informed [D]efendant Moss that he wanted to be removed from [SHU] and placed in a one on one strip cell.  As he (Hamilton) had in his possession medication he was thinking of taking unless he was removed.  Defendant Moss refused to move Hamilton from the cell in an expedient manner and Hamilton swallowed a handful of pills and attempted to commit suicide." *Id.* at ¶ 50.  Plaintiff was then transported to Auburn, issued a misbehavior report by Defendant Moss for faking a suicide attempt, and subsequently removed from the mental health treatment program by Defendants Strickland, Fischer, Faber, and Mayer. *Id.* at ¶¶ 58 & 72-75.

A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994).  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer*).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837.

Plaintiff does not state any facts by which we can impute subjective culpability upon any Defendant.  Nothing in his allegations indicates that any Defendant knew of a substantial risk that Plaintiff might attempt to commit suicide and that they then responded with deliberate indifference.  Further, discharging Plaintiff – after a lengthy hospital stay – under the suspicion that Plaintiff faked

a suicide attempt in order to be removed from SHU might be considered negligent conduct under certain circumstances, but that finding, at best, is not sufficient to state an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) ("Mere negligence or inadvertent failure . . . is not a constitutional violation, however. 'Deliberate indifference' must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with prescribed treatment."). Akin to the *Farmer v. Brennan* standard above, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Therefore, Plaintiff's claim that Defendants Sue Ann Smith, Yildiz, Mahmud, Moss, Fischer, Bezio, Strickland, Faber, and Mayer were deliberately indifferent to his serious medical needs should be **dismissed**.

### ii. Excessive Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). To determine whether an Eighth Amendment violation occurred where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)).  To validly assert an Eighth Amendment violation through the use of excessive force, an inmate must state (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith.  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations and citations omitted).

Plaintiff asserts that Defendants Forbes and Signorella assaulted him repeatedly while he was shackled in a bed at St. Luke's hospital.  *See* Compl. at ¶ 52.  Plaintiff claims he was "bruised, in pain[,] and suffered tremendously from the repeated blows and excessive force inflicted by [D]efendants."  *Id.*  Besides stating that the correctional officers wrote a false report stating that Plaintiff caused a disturbance, he does not state any other facts about this incident or the nature of any injures he suffered, and Plaintiff does not allege that he sought medical treatment.

Liberally construed, Plaintiff's allegations that the Defendants hit him while he was restrained in a hospital bed may well indicate that the Defendants acted wantonly.  *See Dallio v. Santamore*, 2010 WL 125774, at *8-9 (N.D.N.Y. Jan. 7, 2010) (finding that allegations that assaulting officers continued to hit plaintiff after he was restrained and thus compliant and defenseless triggered an Eighth Amendment claim).  While Plaintiff states his claims in a conclusory fashion, he states enough at this state to allege a plausible Eighth Amendment excessive force violation and thus should be entitled to offer evidence to support his claims.  Accordingly, Defendants' Motion to Dismiss Plaintiff claims against Defendants Signorella and Forbes should

be **denied** and Plaintiff's claim should continue to the next stage of litigation.[8]

### iii. Conditions of Confinement

Plaintiff claims that he suffered cruel and unusual punishment when incarcerated in SHU at Shawangunk.  Specifically, he claims that he was locked in a cell for twenty-three hours a day without any desk, chair, lockers, phone or package privileges, religious services, family day picnics, community events, re-entry and transitional services, or "humane conditions," and was subjected to "complete isolation, loud yelling, banging on cell doors, banging on walls, [and] feces being thrown," among other things.  Compl. at ¶¶ 38, 40, 45, & 48.  He complained "constantly" about the conditions of his confinement to Defendants Fischer, Smith, Maly, Giglio, Knott, Bezio, Hochman, and Moss, but Defendants did not remove Plaintiff from SHU.  *Id.* at ¶¶ 48-49.

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted).  Thus, "[c]onditions of confinement only constitute an Eighth Amendment violation if they involve the deprivation of a single identifiable human need or denial of the minimum civilized measure of life's necessities, and the defendants' state of mind was one of deliberate indifference to that deprivation."  *Johnson v. Smith*, 2006 WL 1843292, at *9 (N.D.N.Y. June 29, 2006).  The Eighth Amendment does not "mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation[,]"  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)

---

[8] Plaintiff also may be claiming that he was harassed by each Defendant, who "constantly informed Hamilton that his life was[] in jeopardy."  Compl. at ¶ 48.  Allegations of verbal harassment are insufficient to support a § 1983 claim.  *See Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) ("To the extent that the complaint can be read to assert an Eighth Amendment cruel and unusual punishment claim . . . based on alleged verbal harassment of plaintiff, such conduct is not actionable under § 1983."); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986).

(quoting *Rhodes v. Chapman*, 452 U.S. at 347).

Reading Plaintiff's Complaint liberally, he does not allege enough facts to establish that he was exposed to objectively serious prison conditions that violate the Eighth Amendment. An inmate normally cannot state a valid claim based on "inmate-generated" noise as an impermissibly harsh condition of confinement, *see Griffin v. Coughlin*, 743 F. Supp. 1006, 1018 (N.D.N.Y. 1990) (citing *Whitely v. Albers*, 475 U.S. 312, 319 (1986)), nor that a deprivation of his ability to go to programs and to socialize triggers the Eighth Amendment, *see Jeffrey v. Ahmed*, 2011 WL 4390220, at *14 (N.D.N.Y. Aug. 22, 2011). Additionally, "normal" conditions of SHU confinement do not constitute an Eighth Amendment violation. *See Branch v. Goord*, 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006); *see also Shannon v. Selsky*, 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10, 2005) (noting solitary confinement for twenty-three hours a day with one hour of exercise is not an Eighth Amendment violation). Rather, SHU confinement is not cruel and unusual unless it is "totally without penological justification, grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (internal quotation marks and citations omitted). Further, while the Second Circuit has held that allegations of unsanitary conditions may support an Eighth Amendment claim, *see Gaston v. Coughlin*, 249 F.3d 156, 165–66 (2d Cir. 2001) (finding that triable issue of fact existed where prisoner alleged that he was, *inter alia*, exposed to freezing temperatures throughout the winter, rodent infestation, and exposed to a corridor filled with sewage and human feces for several days), allegations of unsanitary conditions that are "general in nature and do not specify any particularized facts regarding the . . . level of hygiene," do not state a claim upon which relief can be granted, *Williams v. Carbello*, 666 F. Supp. 2d 373, 379 (S.D.N.Y. 2009) (citing *Gaston*). Plaintiff's allegation of "feces being thrown" is clearly not

*-16-*

as severe as the conditions described in *Gaston* nor are his allegations specific enough to plausibly suggest that the conditions which he was exposed to in SHU, viewed collectively, were sufficiently "serious" to satisfy the objective prong of his Eighth Amendment claim.

Accordingly, because Plaintiff fails to allege any such objectively serious deprivation of the minimum civilized measure of life's necessities, he fails to state a claim upon which relief can be granted regarding the conditions of his confinement. Thus, his claim should be **dismissed**.

## 2. Due Process

Plaintiff alleges that Defendants Giglio, Knott, Drowns, Gardner, Wolczyk, and Smith violated his Due Process rights during his December 10, 2007, February 29, 2008, March 18, 2008, and December 10, 2009, disciplinary hearings which resulted in Plaintiff's confinement in keeplock and SHU. Specifically, Plaintiff claims that Defendant Giglio found Plaintiff guilty during a December 2007 disciplinary hearing although he "admitted the law and facts were as Hamilton stated above;" Defendant "Knott violated Hamilton['s] constitutional and regulatory rights and disregarded clear and convincing evidence" relating to urine testing at Plaintiff's February 29, 2008 disciplinary hearing; on March 18, 2008, Defendant Drowns "violated Hamilton's [c]onstitutional and regulatory rights to be present" when he ruled during the rehearing to the February 29, 2008 disposition ordered by Defendant Bezio; Defendants Drowns and Gardner "deliberately lied" at Plaintiff's March 19, 2009 administrative hearing affirming Plaintiff's placement in involuntary protective custody; Defendant Wolczyk prevented Plaintiff from calling relevant witnesses or producing documentary evidence in his December 10, 2009 hearing; and that Defendant Smith, at some unknown time, "signed his signature to confirm that the hearings held on December [10], 2007, February 29, 2008, and March 18, 2008 were conducted in accordance with constitutional and

regulatory rights [despite] the evidence presented." *See* Compl. at ¶¶ 36, 40, 42, 46, & 66.

Here, we find that Plaintiff's conclusory assertions against Defendants Giglio, Knott, and Smith, unaccompanied by any explanations or factual context, are insufficient to state a due process claim upon which relief can be granted. *See*, *e.g.*, *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990) (noting that complaints based on violations of constitutional rights must contain more than conclusory allegations to avoid dismissal). For the same reason, Plaintiff's claim against Defendants Drowns and Gardner, as related to the March 19, 2009 disciplinary hearing, also fails to state a claim.

We turn now to Plaintiff's due process claims against Defendant Drowns, in relation to the March 18, 2008 disciplinary hearing he presided over, and against Defendant Wolczyk, in relation to Plaintiff's December 10, 2009 disciplinary hearing. Compl. at ¶¶ 40 & 66. In order to state a due process claim under § 1983, an inmate must establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). A prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (noting that a prisoner is not entitled to due process protections unless the resulting restricting confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life"). Whether the conditions of the segregation amounted to an atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d at 336 (citations omitted).

*-18-*

Defendant Drowns sentenced Plaintiff on March 18, 2008, to an eighteen-month term in SHU with a corresponding loss of phone, packages, and commissary privileges. Compl. at ¶ 40. On May 22, 2008, however, Defendant Drowns' determination was reversed by Defendant Bezio, who found that "[D]efendant Drowns violated Hamilton['s] right to be present during the administrative hearing." *Id.* at ¶ 41. Here, because Defendant Drowns' guilty finding in Plaintiff's March 18, 2008 disciplinary hearing was reversed by Defendant Bezio on May 22, 2008, Plaintiff was not subject to a penalty – confinement in SHU – from Defendant Drowns' disposition for longer than about two months. Compl. at ¶¶ 40-41. The Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the above-stated *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999); *see also Ayers v. Ryan*, 152 F.3d 77, 83 (2d Cir. 1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry[.]"). Nevertheless, the Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000). Plaintiff provides no facts indicating that the conditions of his confinement were additionally abnormal, outside the conditions inherent in SHU. Therefore, we find that Plaintiff's confinement in SHU and his loss of various privileges from the March 18, 2008 disciplinary hearing Defendant Drowns' presided over, as reversed by Defendant Bezio, did not constitute an atypical and significant hardship, and his due process claim against Defendant Drowns should be **dismissed**.

Addressing Plaintiff's claim against Defendant Wolczyk, the Second Circuit has held that segregative sentences of 125-288 days confinement in SHU are deemed to be "relatively long" and therefore necessitate "specific articulation of fact findings before the district court could properly

term the confinement atypical or insignificant." *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000).

Therefore, Defendant Wolczyk's sentence of twelve months in SHU from Plaintiff's December 10,

2009 disciplinary hearing established a liberty interest by which Plaintiff was entitled to some

measure of due process before being deprived therewith; namely, the ability to call "relevant

witnesses or to produce documentary evidence[.]" Compl. at ¶ 66.

Accordingly, we find that Plaintiff states a valid due process claim against Defendant

Wolczyk upon which relief can be granted.  Plaintiff's claims against Defendants Giglio, Knott,

Gardner, Smith, Drowns, and Bezio, to the extent Plaintiff brings due process claims against

Defendant Bezio for his role in reversing the guilty findings in Plaintiff's disciplinary hearings,

should be **dismissed** for failure to state a claim.

### 3. First Amendment Free Exercise and RLUIPA

In Plainitiff's extensive twenty-four-page Complaint, he states once, and seemingly in

passing, that Defendant Fischer violated his First Amendment free exercise rights and rights under

the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by "refusing to permit

Hamilton to practice the Judasim [sic] religious tenents [sic]."  Compl. at ¶ 71.  Plaintiff claims only

that Defendant Fischer has "refused to acknowledge Hamilton's request to note he is of the Judaism

faith[,] [a]nd to provide a kosher diet to Hamilton like all other prisoners of this faith receive."  *Id.*

The First Amendment to the United States Constitution guarantees the right to free exercise

of religion.  U.S. CONST. AMEND. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  The free

exercise clause applies to prison inmates, subject to appropriate limiting factors.  *Ford v. McGinnis*,

352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of

the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell*

*-20-*

*v. Procunier*, 417 U.S. 817, 822 (1974)).  "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."  *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004).

Further, RLUIPA provides, in pertinent part, that

[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person –
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
42 U.S.C. § 2000cc–1(a).

The principles which guide the analysis of plaintiff's free exercise claim are similar to those applicable to a RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks.  *See Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006).  RLUIPA prohibits governmental entities subject to its reach from imposing a substantial burden on religion even where it stems from a generally applicable law, practice, or policy, but it places a higher burden on the defendants than does the First Amendment, which requires only that an infringement be "reasonably related to legitimate penological interests."  *Dove v. Broome County Corr. Facility*, 2011 WL 1118452, at *10 (N.D.N.Y. Feb. 17, 2011) (internal citations omitted).[9]  While the statute does not define "substantial burden," the Second Circuit has assumed that "[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence . . . Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it."  *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) (citations omitted).  The Supreme

---

[9] This court also notes that RLUIPA may not allow monetary damages against defendants in their individual or official capacities.  *See, e.g.*, *Pugh v. Goord*, 571 F. Supp. 2d 477, 507 (S.D.N.Y. 2008) (citing cases).  A discussion on such at this point in the litigation would be premature.

Court has held that a substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-718 (1981) (cited in *Westchester Day Sch. v. Vill. of Mamaroneck*).

Here, Plaintiff fails to allege enough facts for this Court to determine if he adequately states either a First Amendment and/or RLUIPA claim. His terse, one-paragraph allegation gives no details, such as the duration of the denial of a kosher diet, by which we could evaluate whether he states a claim upon which relief could be granted. *See*, *e.g.*, *McEachm v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) ("There may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored."); *Tafari v. Annets*, 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008) (finding a single meal that was not in accordance with plaintiff's religious dietary needs was a *de minimis* violation insufficient to constitute a violation under the First Amendment). Accordingly, we recommend **dismissal** of Plaintiff's First Amendment and RLUIPA claim **without prejudice** and with **leave to amend** his Complaint to provide this Court with supporting facts that correspond to his claim.

### 4. Conspiracy

Plaintiff alleges that Defendants Gardner, Giglio, Maly, and Smith conspired together to cause legal and personal documents of Plaintiff's to be confiscated and not returned, and that Defendants Mahmud, Moss, and Smith conspired to declare that Plaintiff was "attempting to manipulate the mental health unit to be removed from involuntary protective custody." *See* Compl. at ¶¶ 35 & 56.[10]

---

[10] It is impossible to discern from Plaintiff's Complaint whether he is levying these claims against Defendant Joseph T. Smith, or Defendant Sue Ann Smith, or both. However, because Plaintiff fails to state a conspiracy claim upon which relief can be granted, our analysis can proceed despite the confusion.

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).  In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted).

Additionally, although he does not explicitly assert it in his Complaint, this Court, in consideration of the leniency given to *pro se* litigants, interprets Plaintiff's action as claiming a violation of 42 U.S.C. § 1985, as well.

The only relevant section of that statute is subsection (3) which states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and

*-23-*

(5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't. of Corr. Servs*., 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982) (cited in *Hill v. Philip Morris USA*, 2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004)); *see also Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (finding that in order to state a claim under § 1985(3), a plaintiff "must allege, *inter alia*, that the defendants who allegedly conspired sought, with *discriminatory intent*, to deprive the plaintiff of a right covered by the Constitution or other laws") (emphasis added).

Plaintiff has failed to state a valid conspiracy claim upon which relief can be granted. In fact, Plaintiff's only states that the Defendants conspired; he provides no other facts, or even circumstances, from which this Court can surmise that any such conspiracy occurred. Additionally, Plaintiff's allegations of racial discriminatory animus against him is conclusory. His only claims regarding his race were that Defendants Fischer, Wolxzyk, and Bezio, subjected Plaintiff to "mental anxiety and depression[] [t]hrough acts of disparate treatment, discrimination, [and] racism." Compl. at ¶ 68. He provides no other details nor does he relate a discriminatory animus to Defendants Gardner, Giglio, Maly, Smith, Mahmud, or Moss. Therefore, Plaintiff's claims of conspiracy, pursuant to either § 1983 or § 1985, should be **dismissed**.

5. Retaliation

Plaintiff states that Defendant Gardner removed Plaintiff from his position as an inmate

liaison and placed Plaintiff in SHU under "involuntary protective custody status" in retaliation for complaints he made, and that Defendant Smith[11] petitioned Defendants Fischer and Bezio to transfer Plaintiff to Upstate Correctional Facility in retaliation to the grievances Plaintiff made about Defendants Smith and Knott.  Compl. at ¶¶ 45 & 59.

In order to state a valid retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  The required causal connection means, "in other words, that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Second Circuit has made clear that an inmate has a right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances as guaranteed under the First and Fourteenth Amendments.  *See*, *e.g.*, *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (cited in *Dorsey v. Fisher*, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010)); *see also Colon v. Coughlin*, 58 F.3d 865, 972 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right . . . to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.").  Thus, there is no question that Plaintiff's conduct, filing grievances and making "complaints," is protected by the

---

[11] Here, this Court will assume Plaintiff is referring to Defendant Joseph T. Smith, who, as Superintendent of Shawangunk Correctional Facility, would more likely be involved with inmate transfers from Shawangunk than Defendant Sue Ann Smith, a Unit Chief at Sullivan Correctional Facility.

*-25-*

Constitution and satisfies the first prong of a retaliation claim.

Plaintiff's allegations – again, taken as true for the purposes of this Motion – also establish that the Defendants took "adverse action" sufficient to state a valid retaliation claim. He claims that Defendant Gardner placed Plaintiff in SHU in response to complaints he made. An "alleged transfer to SHU in retaliation . . . could be considered adverse action." *See Smith v. Hash*, 2006 WL 2806464, at *6 (N.D.N.Y. Sept. 28, 2006). He further claims that Defendant Smith transferred Plaintiff from Shawangunk to Upstate in response to grievances Plaintiff made about Defendant Smith. Compl. at ¶ 59. While "prison officials retain significant flexibility and wide discretion in managing the corrections system and placing inmates appropriately," *Houston v. Goord*, 2009 WL 890658, at *13 (N.D.N.Y. Mar. 31, 2009) (citing N.Y. Corr. L. §§ 23, 72, & 112(1), & *Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir. 1996)), when such a transfer is made purely with a retaliatory motive, a claim of unlawful retaliation under the First Amendment is established, *see Meriwhether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989).

Lastly, Plaintiff alleges, although tersely, enough to state a causal connection between the protected conduct of filing complaints or grievances and the adverse action of being confined in SHU or transferred between correctional facilities. He claims that Defendant Gardner threatened Plaintiff with an incarceration in SHU, based on the complaints Plaintiff was making, on March 10, 2009, and that he was placed in SHU on March 13, 2009. Compl. at ¶ 45. Plaintiff does not state the dates he filed grievances against Defendants Smith and Knott, but he alleges that those grievances were the direct reason that Defendant Smith petitioned to have Plaintiff transferred to Upstate. *Id.* at ¶ 59. Because of the ease of alleging retaliatory animus and the potential for abuse, courts must approach retaliations claims "with skepticism and particular care." *Dawes v. Walker*,

239 F.3d 489, 491 (2d Cir. 2001) (internal citations omitted).  Nonetheless, Plaintiff's allegations

at this stage in the litigation are sufficient to state valid retaliation claims against Defendants

Gardner and Smith.  To the extent that Defendants' move for this claim to be dismissed, we

recommend their Motion be **denied**.[12]

### 6. Destruction/Confiscation of property

Plaintiff claims that on or about November 30, 2007, Defendants Gardner, Giglio, Maly, and

Smith instructed two non-Defendants correctional officers to confiscate Plaintiff's legal and personal

documents from his cell.  Compl. at ¶ 35.

Reading his Complaint liberally, Plaintiff may be alleging that the Defendants violated his

right of access to the courts.  The Supreme Court has held that the constitutional right of access to

courts entitles plaintiffs to "adequate law libraries or adequate assistance from persons trained in the

law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  To establish a *Bounds* violation, a plaintiff must

show "actual injury," as "*Bounds* did not create an abstract, freestanding right to a law library or

legal assistance." *Lewis v. Casey*, 518 U.S. 343, 349 & 351 (1996).  Thus, to establish a claim of

inadequate access to the courts under *Bounds*, a plaintiff must show "'that the alleged shortcomings

in the library or legal assistance program hindered his efforts to pursue a legal claim' – for example,

by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for

failure to observe a technicality." *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (citing

*Lewis v. Casey*, 518 U.S. at 351).

Plaintiff fails to meet this burden.  He claims only that the confiscation of an affidavit

---

[12] Defendants do not include a discussion of Plaintiff's retaliation claim in their Memorandum of Law in support of their Motion to Dismiss.  *See* Dkt. No. 47-1.  However, they make clear that they seek dismissal of Plaintiff's Complaint "in its entirety." *Id.* at p. 21.

resulted in the dismissal of an unrelated 42 U.S.C. § 1983 claim.  This conclusory statement, unsupported with any other details or facts, is not enough to state a claim upon which relief can be given.  Thus, to the extent Plaintiff may be claiming that he was denied access to the courts, this claim against Defendants Gardner, Giglio, Maly, and Smith should be **dismissed**.

Plaintiff also claims that Defendants Brand, Sheahan, and Woods "destroyed five bags of personal property that contained: 45 shirts, 1 pair of shoes, 3 sweatpants, 3 sweatshirts, 2 can openers, 13 towels, 5 wash cloths, 2 combs, 1 nail clipper[], 2 cream rinse[s], 10 lotions, 3 toothbrushes, 1 toothpaste, 1 electric razor, 2 pair[s] of gloves, 1,000 photographs, 6 bar[s] of soap, 2 knee braces, and 3 pair[s] of sneakers."  Compl. at ¶ 61.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (emphasis omitted).  This Circuit has held that "confiscation . . . [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies" in the New York penological system.  *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *see also Parratt v. Taylor*, 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Because "New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates," *Nash v. McGinnis*, 585 F. Supp. 2d 455, 461

-28-

(W.D.N.Y. 2008) (citing, *inter alia*, *Koehl v. Dalsheim*, 85 F.3d at 88), we find that Plaintiff's

constitutional due process rights were not violated and recommend that the Court **dismiss** this claim.

### C. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the

summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff

must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P.

4(m).[13]  Failure to properly serve any defendant in accordance with the Federal Rules will result in

the court, upon motion or on its own initiative, dismissing the case without prejudice as to that

defendant.  *Id.*

In this case, there is no indication that the Defendants named in the Complaint as "Osman

Yildiz" and "Sue Ann Smith" have been properly served.  *See* Dkt. Nos. 26 & 27, Lt. (indicating that

Sullivan Correctional Facility does not have employees named Osman Yildiz or Susan Ann Smith).[14]

Although the courts must afford plaintiffs notice before they may dismiss a claim for failure

to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims against these

Defendants lack merit, granting Plaintiff the opportunity to properly serve them would be futile.

Thus, it is recommended that Plaintiff's claims against Defendants Yildiz and Smith be **dismissed**.

Furthermore, Defendant Curtis Drowns is deceased.  *See* Dkt. No. 25, Lt.  Federal Rule of

Civil Procedure 25(a)(1) provides that if a party dies and the claim is not extinguished by the party's

---

[13] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

[14] The Court notes, however, that Cathy Y. Sheehan, Esq., has been assigned on the case docket as representing Sue Ann Smith.  However, a review of the Notices of Appearance Attorney Sheehan filed on behalf of the Defendants, *see* Dkt. Nos. 30, 37, & 42, as well as the Notice of Defendants' Motion to Dismiss, *see* Dkt. No. 41, shows no mention of Defendant Sue Ann Smith.  The Clerk of the Court is directed to correct this mistaken oversight and remove Attorney Sheehan as counsel to Sue Ann Smith.

death, substitution of the proper party may occur.  A motion for substitution may be made by any party, and the motion must be served on the parties as provided in Federal Rule of Civil Procedure 5, and served upon non-parties as one would serve a summons pursuant to Rule 4.  FED. R. CIV. P. 25(a)(1).  Further, unless a motion for substitution is made within 90 days after the death is "suggested upon the record by service of a statement of the fact of the death as provided [in the rule] for the service of the motion," the action will be dismissed as against the deceased party.  *Id.*

Here, neither Plaintiff nor any Defendant has moved for a motion of substitution.  The "rule makes it clear that any party may make a motion for substitution, but as soon as a 'suggestion of death' is filed, the motion for substitution must be made within 90 days."  *Withrow v. Taylor*, 2007 WL 3274858, at *2 (N.D.N.Y. Nov. 5, 2007) (citing FED. R. CIV. P. 25(a)(1)).  There are two affirmative steps required to file a "proper suggestion of death" sufficient to trigger the 90-day time limitation: first, the death must be "formally" suggested "upon the record;" second, the "suggesting party" must serve other parties and non-party successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute.  *See id.* at *2-*3 (quoting *George v. United States*, 208 F.R.D. 29, 31 (D.Conn. 2001) (internal citations omitted)).

In this case, William M. Gonzalez, Esq., Deputy Counsel of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed a letter on April 29, 2011, indicating that Defendant Drowns was deceased.  Dkt. No. 25.  Plaintiff has not responded nor requested any action from the Court regarding this letter, even though Plaintiff was served with the letter.  It is unclear, however, if Attorney Gonzalez or Defendants complied with the requirements for a proper suggestion of death, because there is no indication that the decedent's representative was served.

*-30-*

Although technically the Plaintiff's time to move for substitution would not begin to run until a proper suggestion of death is filed, because this Court finds that Plaintiff's claims against Defendant Drowns are meritless and is recommending dismissal, there is no need for substitution of a personal representative.

### D. Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (internal citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Thus, a defendant may not be liable for damages simply by virtue of holding a supervisory position. *See, e.g., Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, the personal involvement of a supervisory defendant may be shown when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873.[15]

Defendants contest that Defendants Bezio and Fischer were not personally involved in any of Plaintiff's alleged constitutional violations, but instead were included by virtue of their supervisory positions only. We agree. Plaintiff alleged that Defendant Bezio and Fischer approved

---

[15] Several lower courts have struggled with the impact *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) had upon *Colon*, and specifically whether *Iqbal* calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009) (collecting cases). Because the Second Circuit has not yet issued a decision settling this matter, *Colon* remains good law.

transfers of Plaintiff between correctional facilities and authorized him to be placed in the SHU.

Compl. at ¶¶ 59, 61, & 64.  Further, on three different occasions, Defendant Bezio reversed the

sanctions that hearing officers levied on Plaintiff pursuant to disciplinary hearings.  *See* Compl. at

¶¶ 38, 39(b) & 41.  These claims are insufficient to state direct participation by the Defendants in

any constitutional violation, that the Defendants' policies allowed the continuance of constitutional

violations, or that the Defendants were negligent in their supervision of subordinates, besides

conclusory statements that they were.  Therefore, to the extent supervisory liability is alleged based

on any cause of action we recommend proceeding forward, such as excessive force, Plaintiff has

failed to allege the personal involvement of any supervisor.

### E. Eleventh Amendment

Plaintiff brings this action against each Defendant in his or her individual and official

capacity and seeks both monetary compensation and injunctive relief.  Compl. at ¶¶ 89-92.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although by

its terms, the amendment bars suit by citizens of one State against another State, the Supreme Court

has held that such amendment similarly bars suits against a State by its own citizens.  *Hans v.*

*Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental

principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v.*

*New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Thus, sovereign immunity provided for in

the Eleventh Amendment prohibits suits against the State, including a state agency in federal court.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing, *inter alia*, *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.), *cert. denied*, 510 U.S. 1073 (1994)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity.  *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted).  However, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *In re Deposit Ins. Agency*, 482 F.3d at 618 (quotations and citations omitted).

In his Complaint, Plaintiff seeks declaratory relief as well as compensatory damages.  It is not clear from this pleading, however, whether by seeking declaratory relief, Plaintiff is in any way seeking prospective relief.  Plaintiff also is no longer incarcerated, as he was released from DOCCS custody on November 10, 2009.  *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.state.ny.us (last visited February 16, 2012, search

for Department Identification Number ("DIN") 93-A-5631); *see also* Dkt. No. 50, Pl. Lt.[16] Therefore, any claim for prospective relief would invariably be denied as moot. *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) (noting that the prisoner's transfer to another facility renders his claims for declaratory and injunctive relief moot); *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000) (noting that upon plaintiff's release from prison, he was "no longer incarcerated under the supervision of any of the named defendants," thus rendering moot his requests for injunctive and declaratory relief).  As such, all claims for relief against all Defendants in their official capacities should be **dismissed** pursuant to the Eleventh Amendment.  However, such claims for compensatory damages may be pursued against the Defendants in their individual capacities consistent with the recommendations stated herein.

### F. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Firzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).  The doctrine protects public officials from "personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service."  *Eng v. Coughlin*, 858 F.2d at 895.

Qualified immunity is an affirmative defense that must be pleaded by the official claiming

---

[16] "When determining the sufficiency of plaintiff's claims, for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's complaint, to documents attached to the complaint as an exhibit or incorporated by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in brining suit."  *Wachtmeister v. Swiesz*, 2002 WL 1585526, at *2 (N.D.N.Y. June 12, 2002) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  This Court takes judicial notice of the fact that Plaintiff was released from DOCCS custody.  *See Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) (stating that a court may take judicial notice of public documents even if not included in or attached to the plaintiff's complaint).

it.  *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. at

815).  The only pleading filed in the present case is the Plaintiff's Complaint.  Defendants have not

raised this affirmative defense in a responsive pleading as set forth in FED. R. CIV. P. 8(c), but rather

in their memorandum of law in support of their Motion to Dismiss.  *See* Dkt.No. 47-1, at pp. 18-19.

Generally, however, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6)

motion for failure to state a claim upon which relief can be granted."  *Green v. Maraio*, 722 F.2d

1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting

*Green*).  An exception to this general rule exists where the complaint itself sets up, on its face, the

qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be

appropriate.  *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*,

722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 434-55 (noting that the "qualified

immunity defense can be presented in a Rule 12(b)(6) motion, but that the defense faces a

formidable hurdle").

  Pursuant to this Court's analysis, the remaining claims are excessive force claims against

Defendants Signorella and Forbes, a due process claim against Defendant Wolczyk, and retaliation

claims against Defendants Gardner and Smith.  A fair reading of the Complaint does not give rise

to the qualified immunity defense at this juncture.  Indeed, it cannot be said that Plaintiff's rights

were not clearly established at the time of the alleged constitutional violations.  If a plaintiff had a

"clearly established, constitutionally protected right that was violated, [Defendants] must

demonstrate that it was not objectively reasonable for the defendant to believe that his action did not

violate such law."  *Gill v. Hoadley*, 261 F. Supp. 2d 113, 125 (N.D.N.Y. 2003) (citing, *inter alia*,

*Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003)); *see also Anderson v.*

*Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).  Thus, the inquiry depends on the reasonableness of the Defendants' acts.  The Second Circuit has held, however, that such analysis "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002).  For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

### G. Protective Order Barring Discovery

Defendants also move for a protective order staying discovery pending the resolution of defendant's motion to dismiss, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure.  That rule provides, in relevant part, that

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery.

FED. R. CIV. P. 26(c)(1); *see also Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting stay of discovery pending determination of motion to dismiss where court found defendants presented "substantial arguments" for dismissal of many if not all of the claims in the lawsuit); *United States v. Cnty. of Nassau*, 188 F.R.D. 187, 188–89 (E.D.N.Y. 1999) (granting stay of discovery during the pendency of a motion to dismiss where the "interests of fairness, economy and efficiency . . . favor[ed] the issuance of a stay of discovery," and where the plaintiff failed to claim prejudice in the event of a stay).

This Court notes, however, that the Defendants have not yet filed an answer and a scheduling

order mandating and setting forth a time-table for discovery has not yet been issued.  Thus, no discovery has occurred, and this request is moot.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 47) be **granted in part** and **denied in part** as follows:

1. To the extent asserted, Eighth Amendment excessive force claims against Defendants Signorella and Forbes, relating to an assault on Plaintiff at St. Luke's Hospital, should survive Defendants' Motion and proceed to discovery;

2. To the extent asserted, retaliation claims against Defendant Gardner, relating to his confinement of Plaintiff in SHU under involuntary protective custody status pursuant to complaints Plaintiff made, and against Defendant Smith, relating to his request to transfer Plaintiff pursuant to Plaintiff's filing of grievances against Defendant Smith, should survive Defendants' Motion and proceed to discovery;

3. To the extent asserted, due process claims against Defendant Wolczyk, relating to the disciplinary hearing of December 10, 2009, which he presided over, should survive Defendants' Motion and proceed to discovery;

4. To the extent asserted, and should the District Court adopt the above recommendations, Plaintiff's First Amendment and RLUIPA claim against Defendant Fischer should be **dismissed without prejudice** and Plaintiff be **granted leave to amend** his Complaint within thirty (30)  days of the date of such adoption that is consistent with the recommendations made herein;

5. All other asserted claims against all other Defendants be **dismissed** for failure to state a

claim; and it is further

**ORDERED**, that the Clerk of the Court remove Cathy Y. Sheehan, Esq., as counsel for the

unserved Defendant Sue Ann Smith; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   February 29, 2012
           Albany, New York

Randolph F. Treece
U.S. Magistrate Judge