**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DERRICK HAMILTON,

                      Plaintiff,

      - v -                                            Civ. No. 9:10-CV-1066
                                                                     (MAD/RFT)
JOSEPH T. SMITH, *et al.*,

                      Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

DERRICK HAMILTON
Plaintiff, *Pro Se*
175 Diamond Street
New Haven, CT 06515

HON. ERIC T. SCHNEIDERMAN                CATHY Y. SHEEHAN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Derrick Hamilton brought this civil rights action, pursuant to 42 U.S.C. § 1983. Hamilton originally brought the action against twenty-two Defendants, alleging a myriad of constitutional violations spanning a two-year period of time during his incarceration in four state correctional facilities, all while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").[1] Dkt. No. 1, Compl. On March 22, 2012, the Honorable Mae A. D'Agostino, United States District Judge, adopted this Court's

---

[1] In December 2011, during the pendency of this action, Hamilton was released on parole. Dkt. No. 50; New York State Department of Corrections and Community Supervision Website, Inmate Lookup Information, *available at* http://nysdoccslookup.doccs.ny.gov (DIN # 93-A-5631).

Recommendations, granted Defendants' Motion to Dismiss in part, and dismissed seventeen Defendants from this action. Dkt. Nos. 52 & 53. Thereafter, on January 8, 2013, the remaining Defendants – Joseph T. Smith, G. Gardner, M. Signorella, D. Forbes, and Joe Wolczyk – moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 62. In accordance with this District's Local Rules of Practice, Defendants attached to their Motion the Court's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion." *Id.* A response to that Motion was due on or before February 19, 2013.

Also on January 8, 2013, the Clerk of the Court sent Plaintiff a separate Notice notifying him of the nature of summary judgment and warning him of the consequences that could occur should he fail to respond to the Defendants' Motion. Dkt. No. 63. On February 14, 2013, Plaintiff sought, and this Court granted, a thirty-day extension of time for him to respond to the Motion. Dkt. No. 65; Text Order, dated Feb. 14, 2013 (extending Plaintiff's response deadline to March 18, 2013). To date, no response has been filed on Plaintiff's behalf. Having provided Plaintiff with ample opportunity to respond and ample warning of the consequences of his failure to do so, we now address Defendants' Motion. For the reasons explained below, we recommend **granting** Defendants' Motion and **dismissing** this entire action.

## I. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d

51, 54 (2d Cir. 1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (quoting FED. R. CIV. P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (alteration and emphasis in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). This liberal standard, however, does not excuse a *pro se*

litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

Local Rule 7.1(a)(3) requires the non-movant to file a Statement of Material Facts that mirrors the movant's statement in matching numbered paragraphs and that sets forth a specific reference to the record where the material fact is alleged to arise. N.D.N.Y.L.R. 7.1(a)(3). More specifically, this Local Rule provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. (emphasis in original). Courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot*, 2002 WL 368534, at *2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia*, *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the Court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). As long as the Local Rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id*. at 470-71.

### B. Plaintiff's Claims

As a result of the Decisions issued regarding Defendants' prior Motion to Dismiss, four claims asserted in the Complaint are currently at issue: 1) Defendant Joseph T. Smith, Superintendent of Shawanagunk Correctional Facility, allegedly requested that Plaintiff be transferred to another facility in May 2008 as retaliation for questions Plaintiff had been raising regarding the action, or inaction, of DOCCS' employees, and specifically Defendant Smith, in

preventing the death of another inmate; 2) Defendant G. Gardner, Lieutenant at Shawangunk Correctional Facility, allegedly recommended that Plaintiff be transferred to involuntary protective custody status in March 2009 as retaliation for complaints Plaintiff raised, in his capacity as inmate liaison, regarding the quality of the Facility's drinking water; 3) Defendants M. Signorella and D. Forbes, both Corrections Officers at Shawanagunk, allegedly used excessive force against Plaintiff on November 2, 2009, while Plaintiff was receiving treatment at St. Luke's Hospital for an apparent suicide attempt; and 4) Defendant Joe Wolczyk, who presided as a hearing officer over a disciplinary hearing concerning misbehavior reports generated from the November 2, 2009 incident prior to and during the stay at St. Luke's, allegedly denied him due process. *See* Dkt. Nos. 1, 52, & 53.

Defendants assert that Plaintiff's claims against Defendant Smith, for retaliatory transfer, and Defendants Signorella and Forbes, for excessive force, are not exhausted and should be dismissed. Dkt. No. 62-10, Defs.' Mem. of Law. Defendants also claim that Plaintiff's due process claim against Defendant Wolczyk should be dismissed because he received all the process he was due, and his retaliation claim against Defendant Gardner fails as a matter of law. Defendants further assert that Defendants Wolczyk and Gardner are entitled to qualified immunity.[2]

### 1. Unexhausted Claims

The Prison Litigation Reform Act of 1996 ("PLRA") imposes several restrictive conditions on the ability of prisoners to maintain federal civil rights actions. The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until

---

[2] Because, as explained below, we find that Defendants Wolczyk and Gardner did not violate any protected constitutional right, we need not delve into whether they are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

-5-

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court dictates that this "requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Prior to bringing suit in federal court, a prisoner must exhaust those administrative remedies that are available to him. *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[3] N.Y. COMP. CODES R. & REGS. tit. 7, §§ 701.5(a)–(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

As noted above, Plaintiff asserts that in May 2008, Defendant Superintendent Smith requested that Plaintiff be transferred to another facility as retaliation for questions Plaintiff began raising as to the death of another inmate and how the Facility's employees, and specifically Smith,

---

[3] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member or volunteer). N.Y. COMP. CODES R. & REGS tit. 7, § 701.4(a).

were not diligent in protecting that inmate from harm. Plaintiff also asserts that on November 2, 2009, while in an outside hospital receiving treatment for a suicide attempt, Plaintiff was repeatedly beaten by Defendants Forbes and Signorella.

Attached to Defendants' Motion for Summary Judgment are several Affidavits and Exhibits from DOCCS employees with knowledge about the Inmate Grievance Program. *See* Dkt. No. 62-1, Cheryl Parmiter Aff., dated Jan. 4, 2013, with Ex. A; Dkt. No. 62-2, Gary Ter Bush Aff., dated Jan. 3, 2013; Dkt. No. 62-3, Michael Cunningham Aff., dated Jan. 3, 2013; Dkt. No. 62-4, Jeffrey Hale Aff., dated Jan. 4, 2013, with Exs. A–B. These Affidavits and Exhibits establish that Plaintiff did not pursue all of his available administrative remedies with regard to his retaliation claim against Defendant Smith nor with regard to his excessive force claims against Defendants Forbes and Signorella. Regarding the claim against Defendant Smith, it is uncontroverted that Plaintiff did not file any grievance complaining about his transfer to another facility. *See* Cunningham Aff. & Hale Aff. As for the alleged assault, it appears that Plaintiff initiated the grievance process on that claim, however, he did not timely pursue an appeal to CORC, thus, he did not fully exhaust his available administrative remedies. *See* Parmiter Aff. & Hale Aff.; *see also Woodford v. NGO*, 548 U.S. at 93–95; *Jones v. Bock*, 549 U.S. 199, 217–18 (2007). Because it is clear from the submitted, uncontroverted evidence that Plaintiff failed to fully exhaust his available administrative remedies prior to bringing this action, Defendants' Motion should be **granted** as to the above noted claims.[4]

---

[4] Without the benefit of a response from Plaintiff opposing Defendants' Motion, there is no need for us to pore through the Second Circuit's three-part inquiry set forth in *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004), *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004), and *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004). Even affording Plaintiff the most liberality, he could not meet such an inquiry because it is clear that 1) administrative remedies were indeed available as evidenced by the multitude of grievances he filed on a host of other issues during the same time frame, 2) there is no allegation that any specific Defendant, or any one individual in particular, prevented Plaintiff from filing a grievance and ensuring that such grievance was appealed to the highest level, and 3) Plaintiff has not provided the Court with, and the Court cannot think of any, special circumstances which would
(continued...)

2. Retaliation Claim

In is Complaint, Hamilton alleges that he became an inmate liaison committee clerk on March 2, 2009, while at Shawangunk. Compl. at ¶ 44. In that capacity, he allegedly began questioning the veracity of documents sent by Shawangunk staff to the Department of Health regarding the quality of the water at the Facility. *Id*. Plaintiff claims that on March 10, 2009, Defendant Gardner threatened Plaintiff with confinement in a special housing unit ("SHU") if he didn't stop his complaints. *Id*. at ¶ 45. Then, on March 13, 2009, Gardner placed Plaintiff in SHU under involuntary protective custody status, and such status was affirmed on March 19, 2009, following an administrative hearing presided over by Officer Drown.[5] *Id*. at ¶ 46. It is Plaintiff's supposition that Gardner fabricated the notion that Plaintiff was being threatened and instead placed him in SHU as retaliation for Plaintiff's complaints over the water quality.

In order to state a valid retaliation claim, a plaintiff must show that his actions were protected by the Constitution and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

In our previous Report-Recommendation and Order, we determined that Plaintiff exercised his protected First Amendment right when, in his capacity as inmate liaison, he rendered complaints about the Facility's water quality. And there is little doubt that involuntary placement in SHU, with

---

[4](...continued)
otherwise excuse Plaintiff's failure to comply with the dictates of the PLRA.

[5] Plaintiff asserted in his Complaint that Drowns denied him due process during that hearing, however, such claim did not survive the prior Motion to Dismiss. Dkt. Nos. 52 & 53.

all the restrictive living conditions that apply, would constitute an "adverse action." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation.") (citation omitted). For purposes of this Motion, we conclude that based upon the temporal proximity of the complaints, the alleged threats, and, more importantly, the involuntary custody designation, Plaintiff could benefit from the inference that the exercise of his protected First Amendment right was at least a "substantial or motivating factor" in the adverse action of SHU confinement. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). Nevertheless, based upon our review of the Defendants' uncontroverted submissions, we find that Defendant Gardner has shown, by a preponderance of the evidence, that he would have taken action against Plaintiff "even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The transcript attached to Defendants' Motion establishes that during the course of a confidential investigation, Defendant Gardner received information indicating that Plaintiff's welfare and safety were in jeopardy if he remained in the general population. These threats were posed from those within and without the Facility. Hearing Officer Drown allowed Plaintiff to call multiple witnesses to testify on his behalf, mostly as to Plaintiff's temperament and the fact that he is generally regarded as a nice, even-tempered, and approachable individual. Dkt. No. 62-5, Cathy Y. Sheehan Esq., Affirm., dated Jan. 8, 2013, Ex. C (docketed separately at Dkt. No. 62-8). Perhaps Plaintiff sought to show that he generally got along with everyone and, therefore, Gardner must be fabricating the story of a threat posed against him. Yet, none of the witnesses presented by Plaintiff satisfactorily rebutted the confidential testimony regarding threats to Plaintiff's safety posed by the

bloods gang. Thus, even if we find that there was some improper motive afoot, Plaintiff's retaliation claim fails because the adverse action at issue can be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Accordingly, we recommend **granting** Defendants' Motion on this ground.

### 3. Due Process Claim

On the morning of November 2, 2009, while still in protective custody at Shawangunk, Plaintiff swallowed a handful of pills in an apparent attempt to receive mental health treatment; he was instead taken to St. Luke's Hospital. Compl. at ¶¶ 50–51. Following the incident leading up to and including his hospitalization at St. Luke's on November 2, 2009, Plaintiff received two misbehavior reports alleging various prison infractions, including threatening and faking a suicide attempt as a means of manipulating removal from protective custody status in SHU, violent conduct, and creating a disturbance at St. Luke's. Sheehan Affirm., Ex. B (docketed separately at Dkt. No. 62-7). As noted above, Plaintiff asserts that he was denied due process during the disciplinary hearing presided over by Defendant Wolczyk because he was denied the opportunity to call relevant witnesses and/or produce documentary evidence. Compl. at ¶ 66.

In this Court's previous Report-Recommendation and Order, which was adopted by Judge D'Agostino, we held that Plaintiff satisfied his burden of showing that he had a liberty interest in remaining free from the twelve-month SHU disciplinary confinement he received as a result of being found guilty of committing some of the charged prison infractions. Once a prisoner makes a threshold showing that a liberty interest is at stake, the court determines whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Such protections include: (1) advance written notice of the charges

against him; (2) opportunity to call witnesses and present documentary evidence, both subject to legitimate safety and correctional goals of the facility; (3) a fair and impartial hearing officer; (4) a hearing disposition supported by at least some evidence; and (5) a written statement of fact findings supporting the disposition and the reasons for disciplinary action. *Id*. at 563–64; *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing cases).

In support of their Motion for Summary Judgment, Defendants provided the transcript of the disciplinary hearing conducted by Defendant Wolczyk in November/December 2009. Sheehan Affirm, Ex. A (docketed separately at Dkt. No. 62-6). After reviewing that transcript, it cannot be gainsaid that Plaintiff received all of the process he was due. The hearing commenced on November 17, 2009, at which point Plaintiff admitted receiving written notice of the charges against him and that he met with an assistant to whom he provided a list of witnesses he wished to testify and a list of documents he wished to procure. *Id*. at Bates No. Hamilton-10-cv-1066-000084 through 000086. Throughout the hearing, Plaintiff acknowledges receiving all of the documents requested. Plaintiff also requested testimony from a handful of individuals, with each witness testifying at the hearing except three.[6] The total number of witnesses was eleven, including confidential testimony procured by Defendant Wolczyk outside of Plaintiff's presence. Plaintiff's request for two of the nurses from St. Luke's to testify as to his demeanor while receiving treatment, however, was not accommodated because those nurses refused to testify. And because they are not state employees, their testimony could not be compelled by Defendant Wolczyk. *Id*. at Bates No. Hamilton-10-cv-1066-000181 through 000182. Plaintiff also requested testimony from Ann Corcoran to attest to his mental health prior to the alleged suicide attempt. That request was denied because Defendant Wolczyk found her

---

[6] Plaintiff's ongoing requests for witnesses resulted in several extensions of the disciplinary hearing. *See generally* Sheehan Affirm., Ex. A.

testimony to be irrelevant to the charges in the misbehavior report since Ms. Corcoran was not present during any of the incidents of alleged misconduct, and because he procured the confidential testimony from a mental health employee who had access to Plaintiff's mental health records and could attest to his mental state as documented prior to the incident.[7]

As noted above, the Supreme Court recognized that the right of a prisoner to call witnesses at disciplinary hearings is a limited right, subject to the institutional safety or correctional goals, and that the hearing officer need only provide some reason for the denial. *Wolff v. McDonnell*, 418 U.S. at 556; *Ponte v. Real*, 471 U.S. 491 (1985). Among the valid reasons for denying a witness are irrelevance and/or unnecessary. *Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir. 1992) (citing, *inter alia*, *Wolff* and *Ponte* and further noting that "an official may refuse to call witnesses as long as the refusal is justifiable). Because it is clear from the uncontroverted evidence that Plaintiff received all the process he was due, we recommend **granting** Defendants' Motion for Summary Judgment on this ground.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' unopposed Motion for Summary Judgment (Dkt. No. 62) be **GRANTED** and this entire case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

---

[7] No where does Plaintiff challenge the fact that testimony was procured outside his presence, nor that Defendant Wolczyk improperly relied upon such testimony in rendering his determination on the disciplinary charges.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: May 23, 2013
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge